19

FILED

DEC 1 - 2005

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY EMANUEL THOMAS,

Petitioner,

v.

ANDREW JACKSON,

Respondent.

Case No. 04-CV-71979-DT

Paul D. Borman
United States District Judge

______________________________/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Geoffrey Emanuel Thomas has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state court convictions for first-degree murder and related crimes. Petitioner alleges that there was insufficient evidence to support his murder conviction, that the prosecutor overcharged him and argued facts not in evidence, and that defense counsel was ineffective. Respondent argues that Petitioner's prosecutorial-misconduct claims are procedurally defaulted and that the state court's decision on Petitioner's other claims was objectively reasonable. The Court agrees that, at least one of Petitioner's claims is procedurally defaulted and his other claims lack merit. The habeas petition, therefore, will be denied.

## I. Background

Petitioner was charged in Oakland County, Michigan with (1) first-degree murder, (2) first-degree fleeing and eluding a police officer, (3) failing to stop at the scene of a serious personal injury accident, and (4) driving while his license was suspended. The prosecutor

dismissed the fourth count (driving while license suspended) during Petitioner's jury trial, and on November 23, 1999, the jury found Petitioner guilty of first-degree (felony) murder, MICH. COMP. LAWS § 750.316(1)(b), first-degree fleeing and eluding a police officer, MICH. COMP. LAWS § 750. 479a(5), and failing to stop at the scene of a serious personal injury accident, MICH. COMP. LAWS § 257.617(1). The trial court sentenced Petitioner as a fourth habitual offender to life imprisonment for the murder, twelve to twenty years in prison for fleeing and eluding a police officer, and five to fifteen years for failing to stop at the scene of the accident. The convictions and sentence arose from

> the theft of two vehicles that resulted in a brief police chase and a fatal collision, the scene from which defendant fled on foot. On March 31, 1999, police saw a red van crossing a red traffic light on Fourteen Mile Road, east of Rochester Road, in the city of Clawson. The red van was pushing a small gray car. The patrol unit initiated its overhead lights and pulled up behind the red van. The van pushed the car into a parking lot on the north side of the road, and continued to drive east on Fourteen Mile Road. Before reaching Rochester Road, the van made a u-turn in what appeared to be a move to return to the gray car. Although the police officer had established eye contact with the van's driver, and the police car's overhead lights were still on, the van did not stop. Instead, it paused at the parking lot where it had pushed the gray car, and then made another u-turn, again heading eastbound on Fourteen Mile Road. Unable to successfully complete the u-turn, the van drove over the curbs, sidewalks, and front yard lawns of the houses on the south side of Fourteen Mile Road. The van then headed south on Rochester Road. The police car followed with sirens and overhead lights.
>
> Thirty-one-year-old Amy Aplin was driving in a lane ahead of the van. She stopped [in] that lane to make a left turn onto her residential street. The van, instead of slowing down, moved to the northbound lane, increased its speed to over sixty miles an hour, and drove south in the northbound lane. The van struck Aplin's car that was turning left, instantly killing Aplin, and pushing her car about one hundred feet to the southeast corner of Rochester Road and Montrose Avenue. The driver fled the scene into the Royal Oak neighborhood east of Rochester Road, and was seen by different witnesses who observed his erratic behavior in running, entering backyards, jumping fences, breathing heavily, and looking over his shoulder toward Rochester Road. He was apprehended ten minutes after the collision.

*People v. Thomas*, No. 230384, at 1-2 (Mich. Ct. App. June 11, 2002) (unpublished).

Petitioner did not testify or produce any witnesses at trial. His defense was that there was no testimony he stole the van in question and that there was at least a reasonable doubt someone else committed the offenses.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions in an unpublished *per curiam* opinion, *see id.*, and on January 31, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Thomas*, 467 Mich. 952; 656 N.W.2d 531 (2003) (table).

On March 9, 2004, Petitioner filed a motion for relief from judgment in which he raised two issues not presented in the habeas petition. The trial court denied Petitioner's motion on March 15, 2004, but Petitioner did not appeal the trial court's decision. His habeas petition is dated May 17, 2004. The grounds for relief read:

> I. The prosecution lacked sufficient evidence to establish that Mr. Thomas acted with the malice required to sustain a first degree murder conviction, or that the underlying offense - larceny - was in progress. Thus, the first-degree murder conviction violates Mr. Thomas's federal and state constitutional due process rights.
>
> II. The prosecution abused its discretion in charging Mr. Thomas with felony murder - a severe crime that was not supported by the evidence. The abuse of discretion violated Mr. Thomas's state and federal constitutional rights to a fair trial.
>
> III. The prosecutor engaged in misconduct by referring in closing arguments to evidence not in the record. This misconduct violated Mr. Thomas's federal and state constitutional rights to a fair trial and to confront the witness against him.
>
> IV. Mr. Thomas was denied the effective assistance of counsel when the defense counsel failed to call an expert witness to challenge the reliability of the eyewitness identifications. This omission violated

Mr. Thomas's state and federal constitutional rights to a fair trial.

**II. Standard of Review**

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane*, 489 U.S. 288 (1989), unless

> an intervening constitutional decision announces a 'watershed' rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied,* __ U.S. __, 125 S. Ct. 1670 (2005).

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner's first claim alleges that the evidence produced at trial was insufficient to sustain his murder conviction. Petitioner contends that there was no evidence of malice and or a larceny in progress. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that there was sufficient evidence to sustain the felony murder conviction.

The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. [356, 362 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in original). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* at 324 n.16. In Michigan,

> [t]he elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (i.e., malice), (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in (the statute) . . . .

*People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999). "[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

**1. Malice**

Petitioner alleges that, even assuming he was the driver of the van, there was insufficient evidence of malice to sustain the murder conviction because he slowed down and braked before the collision. Evidence that he tried to avoid a collision precluded a finding of malice, according to Petitioner.

Malice, as defined in *Carines*, is "the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Carines*, 460 Mich. at 759; 597 N.W.2d at 136. Although there was evidence that the driver of the van braked before the collision, the prosecutor did not assert that Petitioner intended to kill or even harm anyone. His theory was that, by speeding down Rochester Road and being in a position that required slamming on his brakes, Petitioner knowingly created a high risk of death or great bodily harm. (Tr. Nov. 23, 1999, at 13.)

An accident reconstructionist testified that the red van was traveling at a minimum of 64 miles per hour in a 35-mile-per-hour zone before the brakes were applied. The witness speculated that the van veered into the oncoming lane and hit the victim's car, which was making a left-hand turn. The van skidded 119 feet before hitting the victim's car, and it skidded an additional 100 feet after the collision. (Tr. Nov. 22, 1999, at 79-80 and 85-86.) The Michigan Court of Appeals opined that

> the evidence adduced at trial was sufficient for the jury to reasonably infer that defendant placed himself in a position, the results of which a reasonable person would know, had the natural tendency to cause death or great bodily harm. The evidence adduced at trial was also sufficient for the jury to rely solely on common sense and personal driving experiences to infer that defendant knew of the very high risk of death or great bodily harm that would result from driving over sidewalks and front yard lawns of residential houses, and from driving over sixty miles an hour in the lane of opposite traffic. A reasonable inference may be made that defendant simply took a fatally dangerous risk by miscalculating that the car ahead of him would have cleared the northbound speed lane before he reached it.

*Thomas*, Mich. Ct. App. No. 230384, at 2 (citation omitted).

The state court concluded that the prosecutor proved the element of malice. This Court agrees for the reasons given by the state court. Petitioner's actions, and the lack of any evidence that he did not know what he was doing, supports the conclusion that Petitioner possessed the requisite malice.

**2. Evidence of the Underlying Felony**

Petitioner alleges that there was insufficient evidence that he committed a larceny, which was the underlying felony for the felony murder charge. According to him, there was no evidence that he stole the van or that he intended to permanently deprive anyone of it. He maintains that the jury could have concluded he was merely guilty of unlawfully driving away the

van or fleeing and eluding the police, felonies which are not enumerated in the felony murder statute. As for the gray Honda he was pushing when a police officer first observed him, he claims that there was no evidence of his intent with respect to that vehicle and the jury could have concluded that he was helping a stranded motorist.

Larceny of any kind is a felony enumerated in the felony murder statute. *See* MICH. COMP. LAWS § 750.316(1)(b). The elements of larceny are: "(1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, [and] (5) the taking must be without the consent and against the will of the owner." *People v. Cain*, 238 Mich. App. 95, 120; 605 N.W.2d 28, 43 (1999). "It is not necessary that the murder be contemporaneous with the enumerated felony. *People v. Brannon*, 194 Mich. App. 121, 125; 486 N.W.2d 83, 85 (1992). The statute requires only that the defendant intended to commit the underlying felony at the time the homicide occurred. *Id.*" *People v. Kelly*, 231 Mich. App. 627, 643; 588 N.W.2d 480, 488-89 (1998).

The prosecutor produced evidence that the van Petitioner was driving and the car he was pushing when he was first observed by a policeman did not belong to Petitioner and that he did not have permission to take them. There was additional evidence that the ignition switch in the van was missing and that wires had been pulled through the steering column and twisted together so that the vehicle would start. A policeman found a lock-pulling device, which is used to remove ignitions so that a vehicle can be "hot-wired," on the floor of the van. (Tr. Nov. 19, 1999, at 230-31.) Although Petitioner's fingerprints were not found in the van, a shoe print found in the van matched the right shoe he was wearing at the time of his arrest. (Tr. Nov. 22,

1999, at 30-37 and 66.) The van was stolen within an hour of the fatal accident and a few miles from where the police first observed it.

The gray Honda, which Petitioner was pushing when first observed by a police officer, also had a missing ignition. This was consistent with stolen vehicles that are started without a key. (*Id.* at 121-23.) Petitioner pushed the gray Honda into a parking lot after Police Officer Robert Schreiber activated his lights and started following Petitioner. (Tr. Nov. 19, 1999, at 34-37.) Petitioner took other evasive action after the accident by running away from Officer Schreiber. (*Id.* at 52-55.)

The Michigan Court of Appeals concluded from "the short time frame and distance in which the red van was seen after having been stolen, the fact that it was pushing another stolen car, coupled with the fact of [Petitioner's] brief return to the stolen car when [Petitioner] was being followed by a police car" that Petitioner intended to deprive the rightful owners of one or both vehicles. *Thomas*, Mich. Ct. App. No. 230384, at 3. The state court's conclusion that the prosecutor established the underlying felony of larceny was objectively reasonable.

**3. Summary**

A rational juror could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner was in the process of stealing the van when he sped away from the police and collided with the victim's car. A rational juror also could have concluded that Petitioner knowingly created a high risk of death or great bodily harm when he sped down Rochester Road in the northbound lane. Thus, there was sufficient evidence to sustain Petitioner's murder conviction, and the state court's conclusion on Petitioner's first claim did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*.

**B. The Prosecutor**

The second habeas claim alleges that the prosecutor abused his discretion by charging Petitioner with felony murder, a severe crime that was not supported by the evidence. Petitioner argues consistently with his first claim that there was no evidence of malice or that he stole the red van or the gray Honda. Respondent maintains that this claim is procedurally defaulted because the Michigan Court of Appeals stated that Petitioner did not preserve the issue of prosecutorial overcharge by raising it before the trial court.

Petitioner did file a motion to quash on the ground that the state district court abused its discretion in binding Petitioner over to circuit court on the felony murder charge. During oral arguments on the motion, his attorney said that the felony murder charge "just doesn't fit." Although defense counsel did not say that the prosecutor overcharged Petitioner, she implied as much when she said that the prosecutor simply wanted to charge Petitioner with felony murder because larceny of any kind was one of the new felonies enumerated in the statute. The trial court denied the motion after concluding that the prosecutor was not prohibited from charging larceny if the facts supported a finding of larceny and the larceny was used to elevate a charge of second-degree murder to first-degree felony murder. (Tr. Oct. 13, 1999, at 6 and 11).

The Court concludes that Petitioner arguably raised his present claim in the trial court. Even if the claim is procedurally defaulted, "[p]rocedural default is not a jurisdictional bar to review on the merits." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). In other words, "federal courts have the power to reach the merits notwithstanding a state procedural default." *Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir. 1982) (citing *Fay v. Noia*, 372 U.S. 391, 438 (1963)). The Court, therefore, will excuse the alleged procedural default and proceed to address

the merits of Petitioner's second claim.

The Supreme Court has stated that,

> so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

The Court's discussion on Petitioner's first claim demonstrates that the prosecutor had probable cause to believe Petitioner committed felony murder. Petitioner has not alleged that the prosecutor's decision to charge him with felony murder was based on an unjustifiable standard, arbitrary classification, or improper motive. Therefore, the state court's decision that the prosecution did not abuse its charging discretion was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner has no right to habeas relief on the basis of his second claim.

**C. The Prosecutor's Closing Argument**

The third habeas claim alleges that the prosecutor referred to facts not in evidence during his closing argument when he mentioned a baseball cap that the driver of the van supposedly was wearing. The trial court denied the prosecutor's request to admit the cap in evidence, because the prosecutor had not established a chain of custody, and none of the witnesses had testified that the cap looked like the one they saw on the suspect. (Tr. Nov. 22, 1999, at 130, 135, and 139-44; Tr.

Nov. 23, 1999, at 69.) The prosecutor nevertheless stated in his closing argument that certain witnesses had seen the suspect wearing a baseball cap. (Tr. Nov. 23, 1999, at 7-8 and 10.) Petitioner alleges that he was prejudiced by the comment because the only characteristic he shared with the description of the driver of the van was the tan and green baseball cap he was wearing when arrested.

**1. Procedural Default**

Respondent contends that Petitioner's claim is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The doctrine of procedural default provides that,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Stated differently,

> [w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test for determining whether a petitioner's constitutional claim is procedurally defaulted and barred from habeas review. The Sixth Circuit explained that courts must ascertain whether: (1) there is an applicable state procedural rule and the petitioner failed to comply with that rule; (2) the state courts actually enforced the state procedural rule; and (3) the procedural rule is an

adequate and independent ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* at 138. If these three conditions have been met, the petitioner must show "cause" for not complying with the procedural rule and actual prejudice from the alleged constitutional error in order for a federal court to reach the merits of his claims. *Id.*

**2. The Rule, Violation of the Rule, Enforcement of the Rule, Adequate and Independent State Ground for the Rule**

The procedural rule in question requires defendants to preserve constitutional and nonconstitutional issues for appellate review by first objecting in the trial court. *See People v. Carines*, 460 Mich. at 761-65; 597 N.W.2d at 137-39; *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). "Appellate review of allegedly improper conduct by the prosecutor is precluded where the defendant fails to timely and specifically object . . . ." *People v. Schutte*, 240 Mich. App. 713, 720; 613 N.W. 2d 370, 377 (2000), abrogated on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004).

Petitioner violated this rule by not objecting to the prosecutor's closing argument. The Michigan Court of Appeals enforced the rule by stating that Petitioner failed to object in the trial court to the prosecutor's comments and, therefore, he did not preserve his claim for appellate review.

The contemporaneous-objection rule was an adequate basis for the state court's decision because the rule was in effect at the time of Petitioner's trial. *See, e.g., Grant*, 445 Mich. at 535; 597 N.W.2d at 130 (decided in 1994). The rule was an independent basis for the state court's decision in that the Michigan Court of Appeals actually relied on the rule, and the Michigan Supreme Court did not set aside the procedural bar and decide the case on the merits. Therefore,

in order for this Court to consider the procedurally defaulted claim on the merits, Petitioner must establish "cause" for his default and actual prejudice as a result of the alleged violation of federal law or that failure to consider the claim on the merits will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750.

**3. "Cause and Prejudice"**

Petitioner acknowledges that his attorney did not object to the prosecutor's comments about the baseball cap. To the extent that Petitioner is alleging his attorney was at fault for not objecting to the prosecutor's comments, the alleged ineffectiveness cannot serve as "cause" for Petitioner's default. The reason for this conclusion is that Petitioner did not exhaust the ineffectiveness claim as an independent claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). He did raise a claim of ineffective assistance of counsel in state court, but the claim was not based on the failure to object to the prosecutor's comments. The Court need not determine if Petitioner was prejudiced by the alleged ineffectiveness because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

**4. Miscarriage of Justice**

A petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The miscarriage-of-justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388

(2004); *Carrier*, 477 U.S. at 496.

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Although Petitioner maintains that the evidence was legally insufficient, he has not submitted any new evidence that he is actually innocent of the crimes for which he was convicted. Consequently, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's claim about the prosecutor's closing argument. That claim is procedurally defaulted.

**5. Alternative Analysis**

The Court would have to conclude that Petitioner's claim lacked merit even if it were not procedurally defaulted. Although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction" and may not "assum[e] prejudicial facts not in evidence," *Berger v. United States*, 295 U.S. 78, 88, 84 (1935), they may argue reasonable inferences from the record. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

The baseball cap in question was not admitted in evidence, but the trial testimony linked Petitioner to the cap and established that he was the driver of the van. Ray Saliga testified that the driver of the van was wearing a baseball cap. (Tr. Nov. 19, 1999, at 109.) Janet Day testified

that Petitioner was wearing a cap when she saw him in her neighborhood shortly after she heard sirens and a crash. (*Id.* at 119-20, 123, 126, and 141.) Robert Will, who lived two houses away from Janet Day, saw a man wearing a tan baseball cap about the same time. (*Id.* at 143-45). Finally, Police Officer Michael Frazier testified that Petitioner was wearing a green baseball hat when he detained Petitioner after the accident. (*Id.* at 183-85.)

The Michigan Court of Appeals correctly recognized that, "the prosecutor was merely summarizing the facts in evidence, as testified to by several witnesses, and encouraging the jury to draw reasonable inferences from those facts." *Thomas*, Mich. Ct. App. No. 230384, at 4. The state court's conclusion that the prosecutor's comments were proper was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner would have no right to habeas relief if his third claim were not procedurally defaulted.

**D. Defense Counsel**

The fourth and final claim alleges that Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel. Petitioner faults his attorney for not calling an expert witness to challenge the reliability of eyewitness identifications and for not requesting a jury instruction on the reliability of eyewitness identification. Petitioner contends that an expert witness or a jury instruction on identification would have educated the jury on the inherent problems of identification. The Michigan Court of Appeals adjudicated this claim on the merits and concluded that Petitioner was not deprived of effective assistance of counsel.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), qualifies as "clearly established Federal law" for ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391; *Caver v. Straub*, 349 F.3d 340, 347 (6th Cir. 2003). Pursuant to

*Strickland*, the petitioner must demonstrate that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* The petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Because of the difficulties inherent in making the evaluation , a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The prejudice prong of the Strickland test requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Identity was an issue at trial, and although defense counsel did not produce an expert witness on identification or request a special jury instruction, she did thoroughly cross-examine witnesses who identified Petitioner at trial. *See, e.g.*, Tr. Nov. 19, 1999, at 64-88 (cross-examination of Police Officer Robert Schreiber); *id.* at 129-40 (cross-examination of Janet Day). Counsel's decision to attack the eyewitness testimony and to argue that there was a reasonable doubt as to whether Petitioner was the driver of the van was a reasonable strategy.

Furthermore, it is unlikely that an expert witness or a specially tailored jury instruction would have produced a different outcome. Police Officer Robert Schreiber made eye contact with the driver of the van when the driver exited the van after the collision. There was no doubt in Officer Schreiber's mind that Petitioner was the driver. (*Id.* at 53-54.)

Janet Day identified Petitioner at trial as the man that ran through her neighborhood after she heard sirens and a crash. (*Id.* at 125-26.) Harry Schrom identified Petitioner in court as the man he saw run down a street and jump a fence shortly before the police apprehended the man. (*Id.* at 162-66.)

Officer Michael Frazier indicated that he apprehended Petitioner because Petitioner fit the description of the person who fled from the van. Within five minutes of Officer Frazier detaining Petitioner, Officer Schreiber arrived and positively identified Petitioner as the driver of the van and the person who fled from him. (*Id.* at 184-87.)

While he was detained in a squad car, Petitioner told Sergeant Christopher Jahnke that his name was Calvin Swinton and that he was coming from his house in Oak Park to visit his brother, who worked at Oakland Mall. This explanation was suspicious, because Oak Park was eight miles from where Petitioner was arrested. (*Id.* at 195-199.) Finally, two experts made independent conclusions that a footprint left on a piece of paper in the van matched a shoe that Petitioner was wearing when he was arrested. (Tr. Nov. 22, 1999, at 31 and 66.)

In addition, the standard jury instruction, which the trial court gave, provided guidelines for evaluating the witnesses' testimony. It permitted the jurors to accept or reject all, none, or part of a witness's testimony. (Tr. Nov. 23, 1999, at 49-51.) The Michigan Court of Appeals determined that

> [t]here [was] nothing in the record to indicate any unusual circumstance that would require additional attention to the matter in the instant case. The inconsistencies in the testimony regarding the color of defendant's shirt, along with counsel's competent cross-examination, was sufficient to place doubt in the minds of the jurors regarding the reliability of the testimony identifying defendant as the perpetrator of the crime. Consequently, the standard jury instructions were sufficient to protect defendant's rights.

*Thomas*, Mich. Ct. App. No. 230384, at 5.

This Court agrees with the Michigan Court of Appeals that an additional jury instruction on eyewitness testimony would not have changed the outcome of the proceeding and "counsel's failure to call an expert witness regarding eyewitness identification was neither deficient nor prejudicial to [Petitioner]." The state court's conclusions did not lead to a decision that was contrary to, or an unreasonable application of, *Strickland*.

**IV. Conclusion**

Claims I, II, and IV have no merit, and claim III is procedurally defaulted. Therefore, the application for a writ of habeas corpus [Doc. #3, June 2, 2004] is DENIED.

The Court declines to issue a certificate of appealability on claims I, II, and IV, because reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court declines to issue a certificate of appealability on claim III because reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether the Court's procedural ruling was correct. *Id.*

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: DEC 1 - 2005